IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN S. IORFIDO, | ) |
| Plaintiff | ) |
| | ) Case No.: 1:23-cv-156 |
| v. | ) |
| | ) |
| DOMTAR PAPER COMPANY, LLC | ) *Electronically Filed* |
| and | ) |
| DOMTAR INDUSTRIES, LLC | ) |
| and | ) |
| DOMTAR INDUSTRIES, INC. | ) |
| Defendants. | ) |

## COMPLAINT

This action, brought by Plaintiff Stephen S. Iorfido ("Plaintiff Iorfido"), seeks injunctive relief and an assessment of civil penalties against the defendants (collectively "Domtar Defendants") for causing air pollution or allowing air pollution to occur, in violation of the federal Clean Air Act, 42 U.S.C. § 7401, *et seq*. ("Clean Air Act"). At times relevant hereto, Plaintiff Iorfido has owned and continues to own certain real properties ("Iorfido Business Properties") located in the vicinity of the Domtar Johnsonburg Mill ("Domtar Mill"), a paper mill owned and operated by one or more of the Domtar Defendants in Johnsonburg, Elk County, Pennsylvania. Chronic unauthorized emissions of lime particulate matter from the Domtar Mill have polluted and continue to pollute the air at the Iorfido Business Properties; and lime dust and/or deposits have settled and continue to settle on the ground, buildings, and vehicles at the Iorfido Business Properties; all of which is contrary to law.

## **JURISDICTION, VENUE, CITIZEN SUIT NOTICE**

**Jurisdiction**

1. This Court has subject matter jurisdiction over the federal claims asserted in this action pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 7604(a) (Clean Air Act Citizen Suit). This action seeks declaratory relief, injunctive relief, civil penalties, and an award of costs of litigation as authorized by 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 7413 and 7604.

2. The Domtar Mill is located in Johnsonburg, Elk County, Pennsylvania, which is in the Western District of Pennsylvania.

**Venue**

3. Venue lies in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b). The Domtar Mill and the Iorfido Business Properties involved in this action are located in this district; Plaintiff Iorfido resides in this district; and the events, omissions, and violations of law giving rise to this action occurred in this district through the Domtar Defendants' conduct, specifically in operating the Domtar Mill.

4. This action belongs on the Erie calendar of this Court pursuant to LCvR 3. The causes of action arise out of the operation of the Domtar Mill, which is located in Elk County, Pennsylvania. In addition, Plaintiff Iorfido resides in Elk County, Pennsylvania.

**Citizen Suit Notice**

5. In compliance with 42 U.S.C. § 7604(b) and 40 C.F.R. § 54.2, by certified letter dated January 31, 2023, Plaintiff Iorfido gave notice to the Domtar Defendants, the Administrator of the U.S. Environmental Protection Agency ("EPA"), and the Governor of Pennsylvania of the federal Clean Air Act violations specified in this Complaint and of

2

Plaintiff Iorfido's intent to file suit after 60 days. In addition, by certified letter dated October 20, 2022, Plaintiff Iorfido gave notice to the Domtar Defendants and the Pennsylvania Department of Environmental Protection ("PADEP") of the same or similar violations under applicable provisions of the Pennsylvania Air Pollution Control Act, 35 P.S. § 4001, *et seq.* ("APCA"). It has been more than 60 days since the Domtar Defendants received these Notice of Intent to Sue letters.

6. Neither EPA nor PADEP has commenced or is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standards or limitations at issue in this action. *See* 42 U.S.C. § 7604(b)(1)(B).

## PARTIES

7. Plaintiff Iorfido is an individual residing in the Borough of Johnsonburg, Elk County, Pennsylvania. At times relevant hereto, Plaintiff Iorfido owned and operated two businesses – specifically SSI Inspections and Iorfido Car Wash – as a sole proprietor.

8. Plaintiff Iorfido conducts the above-referenced businesses at the Iorfido Business Properties, which are located at 176, 178, and 207 Glen Avenue, Johnsonburg, Pennsylvania.

9. The Citizen Suit provision of the Clean Air Act, 42 U.S.C § 7604, allows Plaintiff Iorfido to enforce the Clean Air Act, including the air pollution permit for the Domtar Mill, as a "private attorney general." *Middlesex County Sewerage Auth. v. Nat'l. Sea Clammers Ass'n.*, 453 U.S. 1, 17 (1981).

10. Defendant Domtar Paper Company, LLC ("Domtar Paper") is a Delaware Limited Liability Company registered with the Commonwealth of Pennsylvania, Department of State to do business in Pennsylvania. Domtar Paper's registered Pennsylvania address is

c/o National Registered Agents, Inc., 116 Pine Street, 3rd Floor, Suite 320, Harrisburg, PA 17101.

11. Defendant Domtar Industries, LLC ("Domtar Industries") is a Delaware Limited Liability Company registered with the Commonwealth of Pennsylvania, Department of State to do business in Pennsylvania. Domtar Industries' registered Pennsylvania address is c/o National Registered Agents, Inc., 116 Pine Street, 3rd Floor, Suite 320, Harrisburg, PA 17101.

12. Defendant Domtar Industries, Inc. is a Delaware Business Corporation registered with the Commonwealth of Pennsylvania, Department of State to do business in Pennsylvania. Domtar Industries, Inc.'s registered Pennsylvania address is c/o National Registered Agents, Inc., 116 Pine Street, 3rd Floor, Suite 320, Harrisburg, PA 17101.

13. Defendants Domtar Paper, Domtar Industries, and/or Domtar Industries, Inc. (collectively Domtar Defendants) individually or jointly own, operate, and/or control and manage – or have the ability to control and manage – the Domtar Mill.

14. Plaintiff Iorfido and the Domtar Defendants are all "persons" as defined in Section 302 of the Clean Air Act, 42 U.S.C. § 7602(e).

## LEGAL BACKGROUND

15. A main purpose of the Clean Air Act is to protect and enhance the Nation's air quality to promote public health and welfare. 42 U.S.C. § 7401(b)(1). Consistent with this purpose, the Act requires the EPA to establish National Ambient Air Quality Standards ("NAAQS") at levels adequate to protect the public from harmful effects of exposure to air pollutants. 42 U.S.C. § 7409(b)(1).

16. States, including the Commonwealth of Pennsylvania, have primary responsibility for

assuring air quality withing their geographic regions, which includes developing and implementing State Implementation Plans to achieve and maintain NAAQS and other regulatory standards. 42 U.S.C. § 7407(a). This includes requiring compliance with "applicable requirements." 40 C.F.R. § 70.2(1).

17. The 1990 Amendments of the Clean Air Act included subchapter V, 42 U.S.C §§ 7661 – 7661f (commonly referred to as Title V), which requires federal emissions permits for "major sources" as defined therein. Title V air pollution permits "…shall include enforceable emissions limitations and standards… and such other conditions as are necessary to assure compliance with applicable requirements of this chapter, including the requirements of the applicable [State Implementation Plan]." 42 U.S.C. § 7661c(a) and 40 C.F.R. § 70.6(a)(1).

18. The Domtar Mill is a "major source" as defined by Title V of the Clean Air Act. 42 U.S.C. § 7661(2).

19. The Clean Air Act defines "emission standard or limitation" to include "…any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V of this chapter… [and] any permit term or condition." 42 U.S.C. § 7604(f)(4).

20. Section 502(d) of the Clean Air Act, 42 U.S.C. § 7661a(d), requires States to develop and submit to the EPA for approval a permit program under State law that meets the requirements of Title V. As required, the Commonwealth of Pennsylvania obtained EPA approval to administer and enforce the Title V permitting program under the legal authority of the APCA.

21. In Pennsylvania, PADEP issues air pollution permits to authorize emissions from

5

facilities that constitute "major sources" under Title V of the Clean Air Act. These permits are referred to as Title V operating permits, or more simply "Title V permits."

22. On September 5, 2000, PADEP issued a Title V permit for the Domtar Mill (then owned and operated by Willamette Industries), specifically Permit No. 24-00009. The Permit has been transferred, renewed, and amended several times; and was transferred to Domtar Paper in March 2007. The Permit contains emission standards and limitations as defined in the Clean Air Act.

23. The Clean Air Act's Citizen Suit provision provides that any person may commence a civil action against any person who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any "emission standard or limitation" under the Clean Air Act. 42 U.S.C. § 7604(a)(1).

24. The standards, limitations, terms, and conditions of Title V operating Permit No. 24-00009 for the Domtar Mill ("Domtar Air Permit") are enforceable by a Clean Air Act Citizen Suit.

## FACTUAL BACKGROUND

25. In or about 2007, one or more of the Domtar Defendants purchased the Domtar Mill. As requested by Domtar Paper, PADEP transferred the Domtar Air Permit to Domtar Paper on March 28, 2007. More recently, on May 8, 2018, PADEP renewed the Domtar Air Permit, thereby authorizing continued emissions from the Domtar Mill. The Domtar Air Permit was amended on March 31, 2020 and expired on April 30, 2023; however, the Permit was administratively extended by operation of law and remains in effect.

26. The Domtar Air Permit provides emissions standards or limitations for a number of emissions sources of air pollutants at the Domtar Mill, including but not limited to

emissions of lime particulate matter.

27. Generally speaking, papermaking uses sodium hydroxide to turn wood chips into pulp by extracting wood fiber from lignin that binds wood. During this process, a by-product known as lime mud is produced. A lime kiln is used to convert lime mud into lime for reuse. A lime kiln is also used to calcinate limestone to produce a form of lime called quicklime (calcium oxide), which is used to convert sodium carbonate back to sodium hydroxide for reuse in making pulp.

28. The Domtar Mill has a lime kiln and uses lime in its papermaking process.

29. With respect to emissions of lime, the Domtar Air Permit identifies two emissions sources, Source 112 (Lime Unloading System and Lime Silos) and Source 115 (Lime Kiln).

30. Specifically, the emissions standard or limitation for Source 112 provides as follows: "No person may permit the emission into the outdoor atmosphere of particulate matter in a manner that the concentration of particulate matter in effluent gas exceeds 0.04 grain per day standard cubic foot." Domtar Air Permit, Section D, Source ID 112, #001.

31. There are several emissions standards or limitations for Source 115, only some of which relate to lime. (Others relate to sulfur oxides (SO2), nitrogen oxides (NOx), carbon monoxide (CO), and total reduced sulfur (TRS).) The emissions standards or limitations applicable to lime emissions are set forth as "particulate matter" (or "PM") standards or limitations, which apply to all PM pollutants, including lime. The PM standard in the Domtar Air Permit is "PM10," which refers to particulate matter exceeding 10 microns in size. Specifically, the PM10 limitations for Source 115 (Lime Kiln) are as follows: 0.016 grain per day standard cubic foot @ 10% oxygen; 2.7 pounds per hour; and 11.9 tons per

7

year based on 12 consecutive months. Domtar Air Permit, Section D, Source ID 115, #001(a). The Domtar Air Permit also contains a stack opacity limitation to not exceed 20% for a period or periods aggregating more than 3 minutes in any one hour or equal to or greater than 30% at any time. Domtar Air Permit, Section D, Source ID 115, #001(b).

## CAUSES OF ACTION

### COUNT 1
### Federal Law Claim
### Clean Air Act Violations of the Domtar Air Permit

32. Paragraphs 1 through 31 of this Complaint are hereby incorporated by reference, as if fully set forth at length herein.

33. Beginning sometime in 2020, the air above the Iorfido Business Properties began to experience recurring, observable lime dust air pollution events. During these events ("Lime Pollution Events"), lime dust can be seen in the air, and visible lime deposits settle on the ground, buildings, and vehicles at the Iorfido Business Properties.

34. Since the Lime Pollution Events first became observable, they have increased in number and severity over time. By approximately mid-2021, Lime Pollution Events occurred regularly. In 2022, for example, Plaintiff Iorfido observed approximately 18 such Events; and more than 18 Events have already occurred in 2023.

35. Plaintiff Iorfido has lodged numerous complaints with Domtar Paper about the recurring Lime Pollution Events. For a time, Domtar Paper responded to the complaints and reimbursed Plaintiff Iorfido for the cost of cleaning lime dust and deposits from the Iorfido Business Properties and vehicles. However, the Lime Pollution Events have continued unabated, and Domtar Paper no longer responds to Plaintiff Iorfido's complaints or reimburses Plaintiff Iorfido for cleanup costs.

36. Plaintiff Iorfido has also complained numerous times to PADEP, which documented some of the Lime Pollution Events. For example, on April 26, 2023, PADEP inspected the Domtar Mill and requested stack opacity records for Source 115 (Lime Kiln) for the previous two days. The records produced by Domtar Paper showed an opacity violation event that occurred on the morning of April 24, 2023, which corresponds to a Lime Pollution Event observed by Plaintiff Iorfido.

37. Upon information and belief, each Lime Pollution Event corresponds to an exceedance of the standards or limitations applicable to Source 115, and/or possibly Source 112, in the Domtar Air Permit.

38. Upon information and belief, each Lime Pollution Event also corresponds to a failure properly monitor and report stack opacity exceedances as required by the Domtar Air Permit.

39. Each Lime Pollution Event also constitutes a violation of the prohibition against air pollution set forth in Section B, #002 of the Domtar Air Permit.

40. Upon information and belief, Domtar Paper failed to report permit noncompliance to PADEP in accordance with Section B, #25 of the Domtar Air Permit, as well as in Compliance Certifications as required under Section B, #026 of the Domtar Air Permit, each of which constitutes separate violations of the Permit.

41. In the event the Lime Pollution Events are not emanating from stack emissions, they constitute prohibited fugitive particulate emissions in violation of Section C, #001 of the Domtar Air Permit. Moreover: a) because the emissions are visible, fugitive emissions violate Section C, #002 and #004 of the Domtar Air Permit; and b) because the emissions are malodorous, fugitive emissions violate Section C, #003 of the Domtar Air Permit.

9

42. In addition, PADEP verbally informed Plaintiff Iorfido that its investigation into the Lime Pollution Events revealed instances of noncompliance with monitoring and/or recordkeeping requirements under the Domtar Air Permit.

43. Each of the above-referenced permit violations constitutes separate violations of Section 501 of the Clean Air Act, 42 U.S.C § 7661a, and subjects one or more of the Domtar Defendants to an action for injunctive relief to enforce emission standards or limitations, as well as an assessment of civil penalties and an award of litigation costs.

## COUNT 2
### State Law Supplemental Jurisdiction Claim
### Air Pollution Control Act Violations of the Domtar Air Permit

44. Paragraphs 1 through 43 of this Complaint are hereby incorporated by reference, as if fully set forth at length herein.

45. Pursuant to 28 U.S.C. § 1367(a), this Court may exercise supplemental jurisdiction over State law claims if: a) the Federal claim has sufficient substance to confer subject matter jurisdiction; b) the Federal and State claims derive from a common nucleus of operative facts; and c) the claims are such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding. *See Sinclair v Soniform, Inc.*, 935 F.2d 599, 603 (3d Cir. 1991) (Section 1367(a) essentially codified the supplemental jurisdictional standard established in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)).

46. The central claim this action is the Federal law claim set forth in Count 1, above, which asserts Clean Air Act violations of the Domtar Air Permit. Federal subject matter jurisdiction is premised on 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 7604(a) (Clean Air Act Citizen Suit). Accordingly, this Court has subject matter jurisdiction over

this action, and the first requirement to exercise supplemental jurisdiction over related State law claims is met.

47. As noted above (at ¶ 20), primacy to administer and enforce the Federal Title V permitting program was delegated to the Commonwealth of Pennsylvania as required by Section 502 of the Clean Air Act. To obtain EPA delegation approval, Pennsylvania demonstrated to EPA's satisfaction that Pennsylvania's air pollution permit program under the APCA provides the requisite legal authority needed for PADEP to carry out the Federal program. *See* 42 U.S.C. § 7661a(d).

48. Specifically, Section 6.1 of the APCA, 35 P.S. § 4006.1, provides PADEP with the requisite permitting authority to administer and enforce the Federal Title V permit program. Section 6.1 also provides PADEP with the authority to issue "State only" air pollution permits when Title V major source emission thresholds are not exceeded.

49. Title V permits issued by PADEP under the APCA simultaneously satisfy permitting requirements of both Federal and State law. As a result, violations of the Domtar Air Permit constitute violations of both the Clean Air Act and the APCA.

50. Each of the permit violations alleged in Count 1 also constitutes a violation of the APCA, specifically Unlawful Conduct under 35 P.S. § 4008; and subjects the violator to civil penalties under 35 P.S. § 4009.1. Citizen Suits to abate nuisances and restrain violations are authorized under 35 P.S. § 4013.6(c), and the 60-day notice requirement 35 P.S. § 4013.6(d) was satisfied. As with the Citizen Suit provision of the Clean Air Act, the Court may award costs of litigation, including attorney and expert witness fees, under 35 P.S. § 4013.6(f).

51. Although there is substantial overlap between Federal Clean Air Act claims and State

11

APCA claims for violating the Domtar Air Permit, the State law violations are legally separate and distinct.

52. Federal Clean Air Act claims and State APCA claims based on violations of the Domtar Air Permit derive from a common nucleus of operative facts, and the claims are such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding. Accordingly, the second and third requirements to exercise supplemental jurisdiction over State law claims under the APCA are met.

## COUNT 3
### State Law Supplemental Jurisdiction Claim
### Common Law Claims for Money Damages – Public Nuisance/Trespass

53. Paragraphs 1 through 52 of this Complaint are hereby incorporated by reference, as if fully set forth at length herein.

54. In addition to providing Citizen Suit remedies to abate nuisances and restrain violations, the APCA expressly declares that violations of the ACPA or any permit issued by PADEP under the APCA "shall constitute a public nuisance." 35 P.S. § 4013.

55. A public nuisance is a type of tort abatable through an action for injunctive relief under common law in addition to available statutory remedies. As a tort, public nuisance also provides a basis for recovery of money damages as a form of relief. In this regard, Pennsylvania law is well-settled that a tortfeasor is liable for all damages which ordinarily and in the natural course of things resulted from the commission of a tort. *See McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 628 (E.D. Pa 1998), citing *Frank v. Volkswagenwerk, A.G. of West Germany*, 522 F.2d 321, 323 n. 1 (3d Cir. 1975) and *Hillsdale Coal and Coke Co. v. Pennsylvania R. Co.*, 78 A. 28, 30 (Pa. 1910) (citing *1*

*Addison on Torts*, 6th Ed.). *See also, e.g., Werner v. Plater-Zyberk*, 799 A.2d 776, 784 (Pa. Super 2000) (primary purpose of tort law is to compensate an individual, at the expense of the wrongdoer, for damages incurred).

56. Alternatively, common law trespass is also a tort for which money damages may be recovered. In this case, lime air pollution from the Domtar Mill repeatedly entered onto the Iorfido Business Properties without permission or privilege and settled to the ground, each of which events constitutes a physical trespass. Domtar Paper has a legal duty to prevent its pollution from entering onto the Iorfido Business Properties, it breached this duty, and the breach caused harm resulting in compensable money damages.

57. State common law tort claims for money damages caused by Lime Pollution Events also satisfy the supplemental jurisdiction requirements of 28 U.S.C. § 1367(a).

58. As noted above, for a time Domtar Paper compensated Plaintiff Iorfido for costs incurred to clean up lime dust and deposits that settled on the Iorfido Business Properties and Plaintiff Iorfido's vehicles parked at the Properties. However, such payments stopped in or about the end of 2021.

59. Since the reimbursement payments stopped, Plaintiff Iorfido has continued to incur costs to clean up lime dust and deposits that settled on the Iorfido Business Properties and Plaintiff Iorfido's vehicles parked at the Properties. Plaintiff Iorfido is entitled to compensation for these costs.

60. In addition, lime is a caustic substance, and Plaintiff Iorfido is entitled to compensation for damage to his real and personal property caused by Lime Pollution Events.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Iorfido respectfully requests this Honorable Court to enter judgment in his favor and against the Domtar Defendants, individually or jointly, and grant the following relief:

60. A declaration that Domtar Paper repeatedly violated and continues to repeatedly violate the Clean Air Act and the APCA, or each of these statutes, by violating terms and conditions of the Domtar Air Permit;

61. Permanently enjoin Domtar Paper from operating its lime air pollution sources at the Domtar Mill – and in particular sources 115 and 112 – except in accordance with the Domtar Air Permit, the Clean Air Act, and the APCA;

62. Order the cessation of all operations at the Domtar Mill unless and until it can be operated in accordance with the terms and conditions of the Domtar Air Permit, the Clean Air Act, and the APCA;

63. Assess civil penalties against the Domtar Defendants in amounts calculated under 42 U.S.C § 7413 and 40 C.F.R. § 19.4 (currently $117,468 per violation) and applicable EPA policy;

64. Assess additional civil penalties against the Domtar Defendants in amounts calculated under 35 P.S. § 4009.1 and applicable PADEP Technical Guidance;

65. Award Plaintiff Iorfido costs of litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C. § 7604(d) and 35 P.S. § 4013.6(f);

66. Award Plaintiff Iorfido compensatory damages under Pennsylvania law to reimburse costs incurred to repeatedly clean lime dust and deposits from the Iorfido Business Properties and Plaintiff Iorfido's vehicles and other personal property;

67. Award Plaintiff Iorfido compensatory damages under Pennsylvania law for property damage caused by Lime Pollution Events; and

68. Grant such additional or other relief as the Court deems just and proper.

Respectfully submitted,

Date: May 25, 2023

/s/ Matthew L. Wolford
Matthew L. Wolford
Wolford Law
638 West Sixth Street
Erie, PA 16507
(814) 459-9600

Counsel for Plaintiff Iorfido