IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEPHEN S. IORFIDO,** | ) | **C.A. No. 23-156 Erie** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **District Judge Susan Paradise Baxter** |
| | ) | |
| **DOMTAR PAPER COMPANY, LLC,** | ) | |
| et al., | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

### I.      INTRODUCTION

#### A.      Relevant Procedural History

On May 25, 2023, Plaintiff Stephen S. Iorfido, an adult resident of Elk County, Pennsylvania, initiated this action by filing a complaint pursuant to the federal Clean Air Act, 42 U.S.C. § 7401, *et seq.* ("CAA") and Pennsylvania's Air Pollution Control Act, 35 Pa. C.S. § 4001, *et seq.* (APCA"), against Defendants Domtar Paper Company, LLC, Domtar Industries, LLC, and Domtar Industries, Inc., business entities organized and existing under the laws of Delaware with a registered business address in Pennsylvania (collectively referred to as "Domtar"). Domtar owns and operates a paper mill located in Johnsonburg, Elk County, Pennsylvania, known as the Domtar Johnsonburg Mill ("Domtar Mill"). Plaintiff is the owner of certain real property located in the vicinity of the Domtar Mill, on which he operates two businesses – SSI Inspections and Iorfido Car Wash ("Iorfido Business Properties").

Plaintiff alleges that "chronic unauthorized emissions of lime particulate matter" from the Domtar Mill have polluted and continue to pollute the air, and settle on the ground, buildings, and vehicles, at the Iorfido Business Properties (ECF No. 1, Complaint, at p. 1). As a result,

Plaintiff asserts three counts against Domtar: Count I – Violations of the Clean Air Act, 42 U.S.C. § 7401, *et seq.* ("CAA"); Count II – Violations of Pennsylvania's Air Pollution Control Act, 35 Pa. C.S. § 4001, *et seq.* (APCA"); and Count III – Common Law Claims of Public Nuisance and Trespass. As relief for his claims, Plaintiff requests injunctive relief, civil penalties, and monetary damages.

On August 14, 2023, Domtar filed a partial motion to dismiss seeking dismissal of Count III of Plaintiff's complaint for failure to state a claim upon which relief may be granted [ECF No. 6]. Plaintiff has filed a brief in opposition to Domtar's motion [ECF No. 13], and Domtar has filed a reply brief [ECF No. 14]. This matter is now ripe for consideration.

**B.     Relevant Factual Allegations**[1]

Domtar purchased the Domtar Mill in or about 2007 (ECF No. 1, at ¶ 25). The Domtar Mill has a lime kiln and uses lime in its papermaking process (Id. at ¶ 28). Beginning sometime in 2020, the air above the Iorfido Business Properties began to experience "recurring, observable lime dust air pollution events" ("Lime Pollution Events"), during which "lime dust can be seen in the air, and visible lime deposits settle on the ground, buildings and vehicles at the Iorfido Business Properties" (Id. at ¶ 33). By approximately mid-2021, Lime Pollution Events occurred regularly, with approximately 18 such Events occurring in 2022, and more than 18 having already occurred in 2023 at the time Plaintiff filed the within lawsuit (Id. at ¶ 34).

Plaintiff has lodged numerous complaints with Domtar regarding the recurring Lime Pollution Events and, for an unspecified period of time, Domtar responded to the complaints and

---

[1] For purposes of deciding Defendant's motion, the Court must accept as true all of Plaintiffs' factual allegations and view them in the light most favorable to Plaintiffs, to the extent the same are well-pleaded. Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011). Since Defendants' motion merely seeks to dismiss Plaintiff's common law claims of public nuisance and trespass, the only facts recounted herein are those underlying such claims.

reimbursed Plaintiff for the cost of cleaning lime dust and deposits from the Iorfido Business Properties and vehicles (Id. at ¶ 35). However, despite the fact that the Lime Pollution Events "have continued unabated," Domtar, at some point, stopped responding to Plaintiff's complaints and reimbursing Plaintiff for cleanup costs (Id.). Since the reimbursement payments stopped, Plaintiff has continued to clean up lime dust and deposits that have settled on the Iorfido Business Properties and vehicles parked at the Properties. (Id. at ¶ 59).

## II.   DISCUSSION

In Count III, Plaintiff raises two separate causes of action under Pennsylvania tort law – public nuisance and trespass. Domtar has moved to dismiss each claim individually; however, the Court will first address Defendants' argument that both claims are barred by the applicable statute of limitations, as such argument, if successful, would require dismissal of both claims without reference to the reasons cited for dismissal of each claim on the merits.

In Pennsylvania, the statute of limitations for both claims of public nuisance and trespass is two years. See Cassel-Hess v. Hoffer, 44 A.3d 80, 88-89 (Pa. Super. 2012); 42 Pa. C.S. §§ 5524(4) (trespass) and 5524(7) (public nuisance). Thus, such claims must have accrued on or before May 25, 2021 (within two years of the date this action was filed). Here, Plaintiff has alleged that the Lime Pollution Events underlying each claim of trespass and public nuisance began "sometime in 2020." (ECF No. 1, at ¶ 33). Domtar asserts that Plaintiff's claims accrued at such time and, thus, are barred by the two-year statute of limitations.

Under Pennsylvania law, "[w]hen the statute of limitations begins to run for causes of action for trespass and nuisance depends on whether the wrong is permanent or continuing." Caruso-Long v. Reccek, 243 A.3d 234, 239 (PA. Super 2020). "A permanent trespass or nuisance, as the name suggests, is one 'that effects a permanent change in the condition of the

3

land,' and in such a case, 'the statute of limitations begins to run at the time of the original trespass.' A permanent trespass or nuisance entitles the possessor of the land to institute a single action for all past and future damages." Id., quoting Cassel-Hess, 44 A.3d at 86. "Conversely, in the case of a continuing trespass or nuisance 'it is impossible to know exactly how many incidents of trespass will occur in the future, or the severity of the damage that may be caused, such that the full amount of damages cannot be calculated in a single action.' For that reason, a party aggrieved by a continuing trespass or nuisance can maintain a succession of actions based on continuing infractions or the aggravation of the original offense." Id., quoting Kowalski v. TOA PA V, L.P., 206 A.3d 1148, 1161 (Pa. Super. 2019).

So, based on the foregoing, a permanent trespass or nuisance claim accrues at the time the plaintiff was first injured, while a continuing claim accrues anew upon each new injury. To determine whether a trespass or nuisance constitutes a permanent or continuing cause of action, courts must consider a variety of factors, including: 1) "the character of the structure or thing which produces injury"; 2) whether "'the consequences of the [trespass/nuisance] will continue indefinitely'"; and, 3) whether the "'past and future damages' may be predictably ascertained." Cassel-Hess, 44 A.3d at 87, quoting Sustrik v. Jones & Laughlin Steel Corp., 413 Pa. 324, 197 A.2d 44, 46-47 (1964).

Applying the above factors to the present case, Domtar contends that Plaintiff's claims of trespass and public nuisance are permanent in nature and, thus accrued when the first Lime Pollution Event occurred in 2020.[2] The Court agrees.

---

[2] Plaintiff provides very little argument in response and cites no case authority in opposition. Instead, Plaintiff simply states his position that "Domtar's unlawful conduct in this case is a series of discrete incidents," and, "[b]ecause lime is removed after each incident, the trespass is not continuous." (ECF No. 13, at p. 22-23). These blanket statements are unavailing.

As to the first factor, Domtar argues that "'the character of the structure or thing which produces injury' – the Domtar Mill – is permanent," noting that the Mill has been operating continuously since 2000 pursuant to an Air Permit that authorizes emissions. (ECF No. 7, at p. 13). As Domtar notes, "[t]he Pennsylvania Supreme Court has explained that '[i]f the injury is caused by erecting a structure or making use of land which the defendant has a right to continue, the injury is regarded as committed once for all, and action must be brought to recover the entire damage, past and future.'" (Id. at p. 12, citing Russell v. Chesapeake Appalachia, L.L.C., 2018 WL 680764, at *3 (M.D. Pa. Dec. 27, 2018), quoting Shaffer v. Pennsylvania Co., 109 A.2d 284, 286 (1920)). This is particularly true where, as here, the defendant's rightful use of its property, which is causing the injuries at issue, is expected to continue indefinitely. See, e.g., Russell at *3 (where the defendant's continuing operation of natural gas wells constructed on its property, which allegedly "created excessive noise, traffic, dust, light, and air pollution, and impaired the plaintiff's water quality," was found to "spell permanence" under the first factor); Milan v. City of Bethlehem, 94 A.2d 774, 778 (Pa. 1953) (holding that a municipal garbage dump allegedly causing a nuisance will likely "be continued into the indefinite future for the uses of the defendant municipality, and that spells permanency").

As to the second factor, Domtar correctly notes that, because the "structure" – the Domtar Mill – is permanent, "the consequences of the alleged trespass or nuisance will continue indefinitely" and, thus, "any harms tied to the Domtar Mill would be considered permanent injuries." (ECF No. 7, at p. 13). See Russell at *4 (observing that "[w]hen a nuisance producing structure is permanent, … courts have deemed harms tied to the structure… to be permanent injuries"), citing Cassel-Hess, 44 A.3d at 88 (After determining that a lake created on the property of plaintiff's neighbor was a "permanent" structure, the court concluded that a mosquito

infestation on plaintiff's property caused by the formation of the lake "will continue indefinitely"). See also Schlichtkrull v. Mellon-Pollock Oil Co., 152 A. 829, 831 (Pa. 1930) (explaining that harm caused by lawful business is permanent "where the reasonable supposition is that it will be carried on."). Furthermore, the fact that the alleged Lime Pollution Events occur periodically does not make them impermanent, as the Russell court recognized with regard to the harm alleged in that case:

> The level of traffic congestion, the amount of dust, the volume of noise, and brightness of lights may fluctuate in relation to [the defendant's] operations … The fact that these harms may change day-to-day does not obscure the reality that they remain tied to [the defendant's] lawful energy extraction operation, and where the continuance of a lawful business causes the harm, the injury will be considered permanent and it will be treated as such where the reasonable supposition is that it will be carried on.

Russell at *5, quoting Schlichtkrull, 152 A. at 831 (internal quotation marks omitted).

Finally, as to the third factor, Domtar asserts that past and future damages resulting from the alleged public nuisance and trespass "may be predictably ascertained." In support of this assertion, Domtar notes that Plaintiff has, in fact, alleged that Lime Pollution Events have occurred regularly since mid-2021, noting that 18 such Events occurred in 2022 and that 18 more occurred in the first half of 2023. These Events "are not so irregular or unpredictable, akin to the unknown consequences of intermittent flooding, such that they cannot be estimated in a single action absent unadulterated speculation." Russell, at *7, citing Schneider Nat. Carriers, Inc. v. Bates, 147 S.W.3d 264, 280 (Tex. 2004) ("[I]f a nuisance occurs several times in the years leading up to a trial and is likely to continue, jurors will generally have enough evidence of frequency and duration to reasonably evaluate its impact on neighboring property values. In such cases, the nuisance should be treated as permanent, even if the exact dates, frequency, or extent

of future damage remain unknown"). Accordingly, the Court agrees that Plaintiff's past and future damages may be predictably ascertained.

Based on the foregoing, the Court finds that all three factors used to determine whether a trespass or nuisance constitutes a permanent or continuing cause of action weigh heavily in favor of permanence in this case. As a result, Plaintiff's clams of trespass and public nuisance are found to have accrued when the first Lime Pollution Event occurred in 2020, more than two years prior to the filing of the within lawsuit. Thus, the claims are barred by the applicable two-year statute of limitation and will be dismissed accordingly.[3]

An appropriate Order follows.

---

[3] Because the Court has determined that Plaintiff's public nuisance and trespass claims are untimely, there is no need to consider Domtar's reasons for dismissing such claims on the merits.